IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02209-PAB-NRN

TEDDY TANORIS PITTMAN,

Plaintiff,

v.

CITY OF AURORA,
OFFICER DELBERT L. TISDALE, JR.,
OFFICER DAVID ZIMMERMAN,
OFFICER JAMES MCELROY, and
OFFICER ANTHONY SPANO,

Defendants.

---

**REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION FOR PARTIAL DISMISSAL OF ACTION WITH PREJUDICE
PURSUANT TO FED. R. CIV. P. 12(b)(1) AND 12(b)(6)
(DKT. #26)**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This case is before me pursuant to an Order (Dkt. #28) issued by Chief Judge

Philip A. Brimmer referring Defendants City of Aurora, Officer Delbert L. Tisdale Jr.,

Officer David Zimmerman, Officer James Mcelroy, and Officer Anthony Spano's

(collectively "Defendants") Motion for Partial Dismissal of Action with Prejudice Pursuant

to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). Dkt. #26. Plaintiff Teddy Pittman filed a

response (Dkt. #35), and Defendants filed a reply. Dkt. #37. On December 3, 2019, I

heard argument on the subject motion. *See* Dkt. #38. I have taken judicial notice of the

Court's file and considered the applicable Federal Rules of Civil Procedure and case

law. Now, being fully informed and for the reasons discussed below, I **RECOMMEND**
that the subject motion be **GRANTED IN PART** and **DENIED IN PART**.

**BACKGROUND**

This lawsuit arises from a traffic stop that occurred on April 3, 2019.[1] Mr. Pittman
alleges that Aurora police officers "came out of the places they were parked in the dark,
activated their emergency lights, and swarmed" Mr. Pittman's vehicle as he arrived at
the Kings Motor Inn, located at 11800 East Colfax Avenue, Aurora, Colorado.
Defendant Tisdale, apparently the officer who initiated the stop, approached the vehicle
and requested Mr. Pittman's identification documents, which Mr. Pittman handed over.
Defendant Tisdale did not give any reason for stopping Mr. Pittman.

Defendant Tisdale took the license, registration, and proof of insurance, back to
his vehicle, "presumably to run a warrant check[.]" In the meantime, Mr. Pittman
"noticed several other officers arrive on scene, as backup for Defendant Tisdale." When
Defendant Tisdale returned to Mr. Pittman's vehicle, he demanded several times that
Mr. Pittman get out of the car so that officers could search him and his vehicle for drugs
and weapons. Mr. Pittman refused because he did not feel that officers had any
reasonable suspicion to stop him and he did not have any outstanding warrants.
Defendants Tisdale, Zimmerman, McElroy, and Spano[2] then subjected him "to an
assault and battery"— presumably by forcing Mr. Pittman out of the car—and searched

---

[1] Unless otherwise noted, all allegations are taken from Mr. Pittman's Complaint (Dkt. #1) and
are presumed to be true for the purposes of this motion to dismiss.

[2] Mr. Pittman's response refers to and attaches Aurora Police Department Dispatch CAD Notes
related to the incident *See* Dkt. #35 at 20–21. Defendants argue the Court should not consider
this document because it was not contained in the Complaint. However, even if the Court
disregards the document, the Complaint alleges that Defendants Zimmerman, McElroy, and
Spano "arrive[d] on scene" and participated in the subsequent search.

his person and his vehicle. Officers found nothing illegal, and Mr. Pittman was not charged cited or charged with any crimes or offenses. Mr. Pittman points out that this was the second time in less than three months that he was unlawfully stopped by Aurora police officers.[3]

Mr. Pittman asserts five claims for relief pursuant to 42 U.S.C. § 1983 and Colorado state law.

- **Claim One** is a § 1983 claim brought against all Defendants, in their individual and official capacities, for violating Mr. Pittman's Fourth Amendment right to be free from unreasonable searches and seizures during the traffic stop.

- **Claim Two** is a § 1983 equal protection claim brought against all Defendants, in their individual and official capacities. Mr. Pittman claims that he was pulled over "because he was an African American driver in a predominately white City."

- **Claim Three** is a state law negligence claim.

- **Claim Four** is a state law intentional infliction of emotional distress ("IIED") claim.

- **Claim Five** is a state law tort claim for assault and battery.

Defendants move to dismiss all of Mr. Pittman's claims (except Claim One as to Defendant Tisdale) for lack of subject matter jurisdiction and for failure to state claims upon which relief can be granted.

---

[3] The earlier stop is the subject of another lawsuit in this District. *See Pittman v. Palacio et al.*, 19-cv-01947-PAB-NRN (D. Colo.).

## LEGAL STANDARDS

### I. Pro Se Litigants

Mr. Pittman proceeds pro se. Accordingly, the Court "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). However, a pro se litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (the court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). A plaintiff's pro se status does not entitle him to an application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002).

### II. Motion to Dismiss Under Rule 12(b)(6)

Rule 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally

sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall*, 935 F.2d at 1198. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

However, the Court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does the

complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

### III. Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1)

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of the plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Butler v. Kempthorne*, 532 F.3d 1108, 1110 (10th Cir. 2008) (recognizing federal courts are courts of limited jurisdiction and "there is a presumption against our jurisdiction"). A court lacking jurisdiction "must dismiss the cause at any stage of the proceeding in which it becomes apparent that jurisdiction is lacking." *Full Life Hospice, LLC v. Sebelius*, 709 F.3d 1012, 1016 (10th Cir. 2013). A motion to dismiss under Rule 12(b)(1) "admits all well-pleaded facts in the complaint as distinguished from conclusory allegations." *Smith v. Plati*, 258 F.3d 1167, 1174 (10th Cir. 2001). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Pueblo of Jemez v. United States*, 790 F.3d 1143, 1151 (10th Cir. 2015). Accordingly, Mr. Pittman bears the burden in this case of establishing that this Court has jurisdiction to hear his claims.

Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. *Holt v. United States*, 46 F.3d 1000, 1002 (10th 1995).

> First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true. Second, a party may go beyond allegations contained

in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.

*Id.* at 1002–03 (citations omitted). *See also Pueblo of Jemez*, 790 F.3d at 1148 n.4.

## IV. Qualified Immunity

The doctrine of qualified immunity protects government officials from individual liability in the course of performing their duties so long as their conduct does not violate clearly established constitutional or statutory right*s. Washington v. Unified Gov't of Wyandotte Cty.*, 847 F.3d 1192, 1197 (10th Cir. 2017). Once a defendant has asserted a defense of qualified immunity, the burden shifts to the plaintiff who must establish that (1) the defendant violated a right, and (2) the right was clearly established. *Puller v. Baca*, 781 F.3d 1190, 1196 (10th Cir. 2015). A right is clearly established "when a Supreme Court or Tenth Circuit decision is on point, or if the clearly established weight of authority from other courts shows that the right must be as the plaintiff maintains." *Washington*, 847 F.3d at 1197 (quoting *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014) (internal quotation marks omitted)).

A qualified immunity defense may be asserted in a Rule 12(b)(6) motion, although a motion for summary judgment under Rule 56 is the more common vehicle for asserting such defenses. *See Peterson v. Jensen*, 371 F.3d 1199, 1202 (10th Cir. 2004). In asserting a qualified immunity defense in their Rule 12(b)(6) motion, Defendants have set a higher bar for themselves; "a district court should not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief." *Jensen*, 371 F.3d at 1202 (internal quotations and citations omitted). In sum, asserting a defense of qualified immunity shifts the burden to the plaintiff, but doing so in the context of a 12(b)(6) motion materially lessens that burden.

## ANALYSIS

### I. Official Capacity Claims

Defendants argue, and Mr. Pittman concedes, that Mr. Pittman's claims against the Defendants in their official capacities should be dismissed as duplicative of claims brought against the City. The Court agrees. "[A] section 1983 suit against a municipality and a suit against a municipal official acting in his or her official capacity are the same." *Stuart v. Jackson*, 24 F. App'x. 943, 956 (10th Cir. 2001) (quoting *Myers v. Okla. Cnty. Bd. of Cty.Comm'rs*, 151 F.3d 1313, 1316 n. 2 (10th Cir. 1998)). Accordingly, where a plaintiff sues both the municipality and municipal official in an official capacity under the same theory of recovery, courts have dismissed the official capacity claim as "duplicative" or "redundant" of the claim against the municipal entity. *See Leadholm v. City of Commerce City*, No. 16-cv-02786-MEH, 2017 WL 1862313, at *5 (D. Colo. May 9, 2017).

### II. Claim One: Unlawful Search and Seizure

Defendants argue that Mr. Pittman has failed to state a Fourth Amendment claim for unlawful search and seizure against Defendants Zimmerman, McElroy, and Spano.

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . shall not be violated." U.S. Const. amend. IV. A "seizure" for the purposes of the Fourth

Amendment occurs when a government actor terminates one's freedom of movement through means intentionally applied. *See Brower v. County of Inyo*, 489 U.S. 593, 596–97 (1989); *Scott v. Harris*, 550 U.S. 372, 381 (2007). A traffic stop is a seizure for Fourth Amendment purposes. *United States v. Valenzuela*, 494 F.3d 886, 888 (10th Cir. 2007). In a routine traffic stop, an officer "may request a driver's license, vehicle registration and other required papers, run necessary computer checks, and then issue any warning or citation." *United States v. Gregoire*, 425 F.3d 872, 879 (10th Cir. 2005) (citing *United States v. Rosborough*, 366 F.3d 1145, 1148 (10th Cir. 2004)). "Once those tasks are completed, a driver must be allowed to proceed on his way unless reasonable suspicion exists that the driver is engaged in criminal activity or the driver consents to additional questioning." *Id.* For there to be reasonable suspicion, all that is required is that "the officer . . . must have a particularized and objective basis for suspecting the particular person stopped of criminal activity." *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) (en banc) (internal quotation marks omitted).

To hold a government official individually liable under § 1983, the plaintiff must establish that the defendant had personal involvement in the alleged constitutional violation. *Brown v. Montoya*, 662 F.3d 1152, 1163 (10th Cir. 2011). Supervisory status alone does not create liability; rather, there must be an affirmative link between the constitutional deprivation and the defendant's personal participation. *See Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citing *Green v. Branson*, 108 F.3d 1296, 1302 (10th Cir. 1997)). Without an allegation of personal participation, a plaintiff does not state a claim for relief.

At this stage, the initial stop and Defendant Tisdale's conduct is not at issue. Rather, the Court focuses on Mr. Pittman's claim that Defendants Zimmerman, McElroy, and Spano assisted Tisdale in removing Mr. Pittman from the vehicle, physically searching him, and then searching his vehicle.

Defendants acknowledge that the failure to intervene in another officer's unconstitutional conduct may be sufficient to show personal participation. *See Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008) ("An officer who fails to intervene to prevent a fellow officer's excessive use of force may be liable under § 1983."). The Tenth Circuit has held that is "clearly established"

> that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence. An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know: (1) that excessive force is being used, (2) that a citizen has been unjustifiably arrested, or (3) that any constitutional violation has been committed by a law enforcement official. In order for liability to attach, there must have been a realistic opportunity to intervene to prevent the harm from occurring. Whether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise.

*Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1210 (10th Cir. 2008) (quoting *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)).

The Court disagrees with Defendants that the Complaint does not plausibly allege a Fourth Amendment violation under the failure-to-intervene theory. Mr. Pittman claims that he stated several times he would not get out of his vehicle because officers had no right to search either him or his car. He claims he had no outstanding warrants, and there was no other basis for searching him. He claims that Defendants Zimmerman, McElroy, and Spano were present at the scene. Thus, they had an opportunity to speak

with Defendant Tisdale about why the stop occurred and why a search was necessary. However, not only did these officers not intervene, Mr. Pittman claims that all three actively participated in the subsequent unlawful search and seizure. Defendants may challenge the truth of these allegations on summary judgment or at trial, but at this early stage they are sufficient to state a claim under Rule 12(b)(6).

Nor are Defendants Zimmerman, McElroy, and Spano entitled to qualified immunity. The right not to be subjected to a traffic stop without reasonable suspicion is clearly established. *See Whren v. United States*, 517 U.S. 806, 811–12 (1996). Moreover, "[i]t is well-established that an automobile stop is subject to the Fourth Amendment imperative that guarantees the right to be free from unreasonable searches and seizures." *Lange v. City of Grand Junction*, No. 08-cv-02049-LTB, 2009 WL 1362636, at *4 (D. Colo. May 14, 2009) *See also Vondrak*, 535 F.3d at 1210 ("[G]iven Krause's close proximity to the initial handcuffing, and his presence immediately thereafter, the district court was correct in denying qualified immunity to Krause on the excessive force claim."). Accordingly, Claim One should proceed against Defendants Zimmerman, McElroy, and Spano, and Tisdale.

### III. Claim Two: Equal Protection

In *Whren*, the Supreme Court held that claims asserting selective enforcement of a law on the basis of race are properly brought under the Equal Protection Clause. 517 U.S. at 813. The fundamental guarantee of the Equal Protection Clause is that "all persons similarly situated shall be treated alike." *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985). To adequately plead an equal protection claim, Mr. Pittman must allege facts that Defendants treated him differently from others similarly

situated. *Id*. "Individuals are 'similarly situated' only if they are alike 'in all relevant respects.'" *Requena v. Roberts*, 893 F.3d 1195, 1210 (10th Cir. 2018) (quoting *Coal. for Equal Rights, Inc. v. Ritter*, 517 F.3d 1195, 1199 (10th Cir. 2008)). To state a claim of racially selective law enforcement, Mr. Pittman also must demonstrate that Defendants' actions had a "discriminatory effect and were motivated by a discriminatory purpose." *Marshall v. Columbia Lea Reg'l Hosp.*, 345 F.3d 1157, 1168 (10th Cir. 2003). "The discriminatory purpose need not be the only purpose, but it must be a motivating factor in the decision." *Id.* "[T]here need not be direct evidence of discriminatory purpose; discriminatory purpose can be shown with purely circumstantial evidence." *Blackwell v. Strain*, 496 F. App'x 836, 844 (10th Cir. 2012).

As to Defendants Zimmerman, McElroy, and Spano, Mr. Pittman's equal protection claim is deficient. Defendants Zimmerman, McElroy, and Spano did not initiate the stop. Moreover, there is no indication that they were aware of Mr. Pittman's race when they arrived on scene. There is also no allegation that these officers treated Mr. Pittman differently from other similarly situated drivers. Accordingly, they are entitled to qualified immunity.

It is a closer question as to Defendant Tisdale because he pulled Mr. Pittman over. Mr. Pittman alleges that Defendant Tisdale was travelling in the opposite direction of him and when Defendant Tisdale "seen who he was, Defendant Tisdale immediately got behind Plaintiff and activated his emergency lights, while running Plaintiff's license plate through the database." Mr. Pittman alleges that (1) there was no reason to stop him; (2) Defendant Tisdale saw Mr. Pittman and was aware of his race; (3) Defendant Tisdale gave no justification for the stop; and (4) he was not cited or charged with any

offense. Accepting these allegations as true, Mr. Pittman plausibly alleges that Defendant Tisdale's decision to pull him over was pretextual. *See Marshall*, 345 F.3d at 1169 (plaintiff's testimony that he did not commit a traffic violation evidence of pretext). He asserts that "Defendant Tisdale's real reason for pulling over Plaintiff was the color of his skin. Defendant Tisdale initiated the traffic stop of Plaintiff because he was an African-American driver in a predominately white City."

The Complaint also sets forth demographic data Mr. Pittman argues supports his equal protection claim. Mr. Pittman states that although African Americans only make up ten percent of the population of Aurora, they are subjected to 20 percent of the traffic stops, while white drivers are stopped 35 percent of the time even though they make up almost 56 percent of the population. Mr. Pittman also argues that African American drivers are searched at a significantly higher rate during routine traffic stops.

Statistical evidence can be used to show selective law enforcement practices. *See Marshall*, 345 F.3d at 1168. However, "'such evidence alone is rarely enough to show discriminatory purpose' . . . [because] to prove an Equal Protection Clause claim, plaintiffs 'must prove that the decisionmakers in his case acted with discriminatory purpose.'" *Handy v. Fisher*, No. 18-cv-00789-RBJ-SKC, 2019 WL 1375677, at *4 (D. Colo. Mar. 27, 2019) (quoting *Blackwell*, 496 F. App'x at 840). Although that deficiency may become evident at the summary judgment stage, within the context of a Rule 12(b)(6) motion, the Court believes that Mr. Pittman has alleged enough to proceed on his equal protection claim against Defendant Tisdale.

I compare this case to *Handy*, where Judge R. Brooke Jackson adopted a recommendation by Magistrate Judge Kato S. Crews and dismissed an Equal

Protection Clause claim against law enforcement officers in Conifer, Colorado. In that case, officers required an African-American passenger, but not a white passenger, to produce identification after a traffic stop. The plaintiff claimed he was racially profiled and sued on Fourteenth Amendment grounds. In dismissing this claim, which was characterized as "a claim of racially selective law enforcement," Judge Jackson found the demographic data provided by the plaintiff to be inadequate to show a discriminatory purpose. The data cited merely showed that of the 8,348 people who resided in Conifer, less than one percent are black. Judge Jackson explained that this demographic data was insufficient to support an equal proception violation because "the information sheds no light on the practices of individual deputies and how often they stop black drivers versus nonblack drivers or drivers of other races or ethnicities." 2019 WL 1375677, at *4.

By contrast, in this case, Mr. Pittman has alleged, via demographic data, that the Aurora Police Department stops black drivers at a significantly higher rate than white drivers, compared to their proportion of the population. I recognize that statistical evidence alone is rarely enough to show discriminatory purpose. *Blackwell*, 496 F. App'x at 840. However, Mr. Pittman also alleges that Defendant Tisdale was aware that Mr. Pittman was black and pulled him over without any justification, pretextual or otherwise. Thus, given the early stage of this litigation, I believe that Mr. Pittman's Complaint alleges enough related to discriminatory intent as to Defendant Tisdale for his Fourteenth Amendment claim to survive a Rule 12(b)(6) dismissal effort.

**IV. Claims Three–Five: State Law Tort Claims**

Defendants argue that the Court does not have jurisdiction over Mr. Pittman's state law tort claims under the Colorado Governmental Immunity Act (the "CGIA").

The CGIA provides that "no public employee shall be liable for injuries arising out of an act or omission occurring during the performance of his or her duties and within the scope of his or her employment, unless such act or omission was willful and wanton." Colo. Rev. Stat. § 24–10–105(1). "Willful and wanton" is not defined in the CGIA. "The majority of courts to address the issue, however, have applied the definition set forth in Colorado's exemplary damages statute, Colo. Rev. Stat. § 13-21-102[:] Willful and wanton conduct is 'conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff.'" *Zerr v. Johnson*, 894 F. Supp. 372, 376 (D. Colo. 1995) (citing, *inter alia, Moody v. Ungerer*, 885 P.2d 200, 204 (Colo. 1994)). "The 'willful and wanton' standard, in other words, requires that the actor 'act not only unlawfully, but with the intent to injure, or in conscious disregard of the probability that his acts would result in injury to the plaintiff.'" *Feltman v. Europe*, No. 18-cv-3113-WJM-STV, 2019 WL 6215445, at *8 (D. Colo. Nov. 21, 2019) (quoting *Navratil v. Parker*, 726 F. Supp. 800, 805 (D. Colo. 1989) (alteration omitted).

Defendants argue that Mr. Pittman has failed to plead a non-conclusory factual basis of willful and wanton conduct. *See* Colo. Rev. Stat. § 24-10-110(5)(a) ("In any action in which allegations are made that an act or omission of a public employee was willful and wanton, the specific factual basis of such allegations shall be stated in the

complaint."). Mr. Pittman maintains that his Complaint sets forth sufficient facts to show that Defendants' conduct was willful and wanton.

The Court need not decide the willful and wanton issue because the CGIA precludes jurisdiction on a different basis. Under the CGIA, an injured person seeking damages from a public entity or employee, "whether or not by a willful and wanton act or omission," must provide written notice of the claim within 182 days after the date of the discovery of the injury, regardless of whether the person then knew all of the elements of a claim or of a cause of action for such injury. Colo. Rev. Stat. § 24–10–109(1); *Finnie v. Jefferson Cty. Sch. Dist. R-1*, 79 P.3d 1253, 1255 (Colo. 2003).

> The statute sets forth the following information that must be contained in a notice:
>
> (a) The name and address of the claimant and the name and address of his attorney, if any;
>
> (b) A concise statement of the factual basis of the claim, including the date, time, place, and circumstances of the act, omission, or event complained of;
>
> (c) The name and address of any public employee involved, if known;
>
> (d) A concise statement of the nature and the extent of the injury claimed to have been suffered;
>
> (e) A statement of the amount of monetary damages that is being requested.

Colo. Rev. Stat. Ann. § 24-10-109(2). While the requirement to file within the statutory period is jurisdictional, "the adequacy of the notice's contents is subject to a substantial compliance standard under section 24–10–109(2)." *City & Cty. of Denver v. Crandall*, 161 P.3d 627, 632 n.5 (Colo. 2007). "Substantial compliance requires a good faith effort to include, as far as is reasonably possible, the listed information." *Awad v. Breeze*, 129 P.3d 1039, 1041 (Colo. App. 2005), *as modified on denial of reh'g* (June 9, 2005), *cert.*

*denied* (Colo. Feb. 27, 2006). *See also Cassidy v. Reider*, 851 P.2d 286, 288 (Colo. App. 1993) (quoting *Woodsmall v. Reg'l Transp. Dist.*, 800 P.2d 63, 68 (Colo.1990)) ("'substantial' compliance [is] a degree of compliance 'considerably more than minimal, but less than absolute.'").

"Complying with the notice of claim [as set forth in section 24–10–109(1)] is a jurisdictional prerequisite to suit." *Gallagher v. Bd. of Trs. for Univ. of N. Colo.*, 54 P.3d 386, 391 (Colo.2002). Furthermore, Colorado courts describe § 24–10–109(1) as a non-claim statute, "meaning that failure to comply with the 180–day period is an absolute bar to suit." *Id.* at 393.

Mr. Pittman has not demonstrated that he complied with the CGIA notice requirements, and therefore he has not met his Rule 12(b)(1) burden of establishing that this Court has jurisdiction to hear his state law claims. *See Weise v. Colorado Springs*, No. 17-cv-02696-PAB-NYW, 2019 WL 4751804, at *18 (D. Colo. Sept. 30, 2019) (Chief Judge Brimmer considered, *sua sponte*, whether the plaintiff complied with the CGIA notice requirements where the parties only argued whether the defendants' conduct was willful and wanton).

First, the Complaint does not even mention the CGIA. "[A] claimant must allege in his or her complaint that the claimant has complied with the jurisdictional prerequisite of filing of a notice of claim." *Kratzer v. Colo. Intergovernmental Risk Share Agency*, 18 P.3d 766, 769 (Colo. Ct. App. 2000). Mr. Pittman did not do so here.

Second, to the extent that Mr. Pittman relies on the City of Aurora Complaint Form he submitted on June 11, 2019 (*see* Dkt. #35 at 24–25), that reliance is misplaced for several reasons. The report does not include a "statement of the amount of

monetary damages that is being requested." Moreover, the Complaint Form was submitted to the Aurora Police Department, and Mr. Pittman has not established that it, rather than the Aurora City Council, was the appropriate governing body to receive the required notice. *See Humood v. City of Aurora, Colo.*, No. 12-cv-02185-RM-CBS, 2014 WL 4345410, at *11 (D. Colo. July 2, 2014) ("Although Mr. Humood may have put the Aurora Police Department on notice of his alleged mistreatment, the CGIA specifically states that the required notice must be received by the 'governing body of the public entity or the attorney representing the public entity.' The City of Aurora is a home-rule municipality, *see, e.g., Trailer Haven MHP, LLC v. City of Aurora*, 81 P.3d 1132, 1137 (Colo. App. 2003), with legislative powers vested in its City Council. *See* Aurora City Charter, Section 3–9. Plaintiff has not come forward with any evidence that the Aurora City Council has delegated its governing authority to the Aurora Police Department."). Finally, the Complaint Form "does not suggest that a lawsuit is reasonably foreseeable or signal a clear intent to initiate civil litigation." *Id.*

For these reasons, Mr. Pittman's state law tort claims should be dismissed.

## V. Claims Against the City of Aurora

Finally, the Court addresses Mr. Pittman's claims against the City of Aurora.

"To establish municipal liability under § 1983, Plaintiff must prove a constitutional violation by the individual officers. In other words, 'absent a constitutional violation by the individual police officers whose conduct directly caused plaintiffs' injuries, there can be no municipal liability.'" *Estate of Ronquillo by & through Estate of Sanchez v. City & Cty. of Denver*, 720 F. App'x 434, 441 (10th Cir. 2017) (citing *Trigalet v. City of Tulsa*, 239 F.3d 1150, 1156 (10th Cir. 2001)). Here, Mr. Pittman asserts cognizable

constitutional claims against (1) each individual Defendant in Claim One for unlawful search and seizure, and (2) Defendant Tisdale in Claim Two for violating the Equal Protection Clause.

Next, in addition to plausibly alleging that the officers committed a constitutional violation, Mr. Pittman must also allege sufficient facts to demonstrate that a municipal policy or custom was the moving force behind the constitutional deprivation. *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004). A municipal policy or custom can take the form of

> (1) a formal regulation or policy statement; (2) an informal custom amoun[ting] to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused.

*Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) (citations omitted).

Mr. Pittman alleges that the City of Aurora has "an unconstitutional policy, practice, or custom . . . which authorizes it's [sic] police officers to unlawfully search and detain citizens, specifically young black males, without reasonable suspicion or probable cause." Dkt. #1 at 6, ¶ 22. Mr. Pittman also points to the fact that this was the second baseless stop in three months. *Id.* He also alleges that the City of Aurora "explicitly approved of all the actions taken by Defendants . . . during this incident." *Id.* at 11, ¶ 55. Mr. Pittman claims that because the Aurora Police Department's Internal Affairs Bureau did not discipline the officers, it "condon[ed] and ratif[ied] unconstitutional behavior by its officers." *Id.* at 7, ¶ 31.

The Court agrees with Defendants that Mr. Pittman fails to state a claim against the City of Aurora. Mr. Pittman alleges that the demographic data discussed above shows the City of Aurora has a policy, practice, or custom of illegal searches and seizures. However, he does not allege that the traffic stops or vehicle searches represented by the statistics were violative of the Fourth Amendment. In his response, Mr. Pittman also describes other incidents where non-white Aurora citizens were subjected to excessive force, unreasonable searches and seizures, and racial profiling by Aurora police officers. However, none of those incidents involved traffic stops like the one at issue here. Nor does Mr. Pittman set forth sufficient facts that would demonstrate the existence of a formal regulation or policy statement promulgated by the City of Aurora that its police officers customarily and unconstitutionally pull over black drivers and search their vehicles without reasonable suspicion. The fact that this was the second time that Mr. Pittman was stopped does not show a continuing, persistent, or widespread practice.

Finally, Mr. Pittman cannot maintain a municipal liability claim on the basis of ratification. "Where a plaintiff seeks to impose municipal liability on the basis of a single incident, the plaintiff must show the particular illegal course of action was taken pursuant to a decision made by a person with authority to make policy decisions on behalf of the entity being sued." *Moss v. Kopp*, 559 F.3d 1155, 1169 (10th Cir. 2009) (citation omitted). While "it appears that the law permits an inference of deliberate indifference if officers received no discipline for 'repeated' complaints of civil rights violations," *Harris v. City & Cty. of Denver*, No. 19-cv-00572-MEH, 2019 WL 6876870, at *12 (D. Colo. Dec. 17, 2019) (citation omitted), the Court agrees with Defendants that

Mr. Pittman fails to articulate any facts to indicate that a final policymaker reviewed the decisions alleged in the complaint or approved of the basis for those decisions. The Tenth Circuit considers three factors in determining whether an individual is a final policymaker: "(1) whether the official is meaningfully constrained by policies not of that official's own making; (2) whether the official's decisions are final—i.e., are they subject to any meaningful review; and (3) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority." *Randle v. City of Aurora*, 69 F.3d 441, 448 (10th Cir. 1995) (quotation omitted). Alternatively, ratification occurs when the policymaker knew and approved of the conduct, thereby adopting the unconstitutional motive. *See Butcher v. City of McAlester*, 956 F.2d 973, 978 (10th Cir. 1992) The Complaint is wholly conclusory as to the policymaking authority of the unidentified Internal Affairs Bureau officer who reviewed Mr. Pittman's administrative complaint. Such bare allegations, standing alone, cannot form the basis for municipal liability under the "final policymaker" theory.

## RECOMMENDATION

It is hereby **RECOMMENDED** that Defendants' Motion for Partial Dismissal of Action with Prejudice Pursuant to Fed. R. Civ. P. 12(B)(1) and 12(B)(6) (Dkt. #26) be **GRANTED IN PART** and **DENIED IN PART** as follows:

- **DENIED** as to Claim One against Defendants Zimmerman, McElroy, and Spano;

- **DENIED** as to Claim Two against Defendant Tisdale only; and

- **GRANTED** as to Claim Three, Claim Four, and Claim Five against all Defendants.

**NOTICE:  Pursuant to 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b)(2),**

**the parties have fourteen (14) days after service of this recommendation to serve**

**and file specific written objections to the above recommendation with the District**

**Judge assigned to the case.  A party may respond to another party's objections**

**within fourteen (14) days after being served with a copy.  The District Judge need**

**not consider frivolous, conclusive, or general objections.  A party's failure to file**

**and serve such written, specific objections waives *de novo* review of the**

**recommendation by the District Judge, *Thomas v. Arn*, 474 U.S. 140, 148-53**

**(1985), and also waives appellate review of both factual and legal questions.**

***Makin v. Colorado Dep't of Corrections*, 183 F.3d 1205, 1210 (10th Cir. 1999);**

***Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996).**

Dated:     January 31, 2020
           Denver, Colorado

N. Reid. Neureiter
United States Magistrate Judge